IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bradley Benes, | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-15749 |
| | ) |
| Cenlar FSB, | ) Hon. Matthew F. Kennelly |
| | ) |
|         Defendant. | ) |

**CENLAR FSB'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant Cenlar FSB moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This is the second lawsuit Bradley Benes has brought against Cenlar FSB. In the prior lawsuit, Benes sued Cenlar for improperly communicating with him regarding his mortgage loan. The prior lawsuit ended with a written settlement agreement.

As part of its agreement to resolve the first lawsuit Plaintiff filed against it, Cenlar agreed to "delete the tradeline" with the major consumer reporting agencies.[1] But Cenlar did not agree to do so by any deadline. Nor did Plaintiff ever inform Cenlar, prior to threatening this lawsuit and demanding money to forbear from filing this case, that Cenlar had failed to delete the tradeline (as of the date he filed this case) and to stop furnishing information about him to the CRAs.

---

[1] To "delete the tradeline" means to request that consumer reporting agencies remove all previously reported information about a consumer. Ultimately, only the CRAs can delete this information, but furnishers of consumer information may request that the CRAs do so. In this case, Cenlar agreed to request that the CRAs delete information Cenlar had previously furnished to the CRAs.

As soon as Plaintiff's counsel brought the matter to Cenlar's counsel's attention, the tradeline was immediately deleted by all three CRAs. No further information about Plaintiff has been furnished to the CRAs.

Nevertheless, Benes has elected to sue Cenlar, alleging that Cenlar failed to request that the mortgage account tradeline be deleted on his consumer report as required by the settlement agreement. He brings claims for breach of contract and for violation of the Fair Credit Reporting Act, contending that Cenlar failed to do what it agreed to do: "delete the tradeline", and that by continuing to furnish information about Plaintiff to the CRAs after entering into the settlement agreement, Cenlar further violated the FCRA.

Cenlar did not breach its settlement agreement with Plaintiff. It agreed to "delete the tradeline" and in fact did so. Plaintiff's claim is that Cenlar didn't do so quickly enough. But no provision of the settlement agreement required deletion by any particular deadline, and Plaintiff acted in bad faith by not asking Cenlar about the status of the deletion of the tradeline sooner. Instead, Plaintiff elected to sandbag, hoping to score another settlement, and more money, from Cenlar by threatening more litigation.

Moreover, the settlement agreement explicitly limits Benes's remedy for Cenlar's failure to request that the tradeline be deleted. Even if Cenlar were in breach of the settlement agreement, Plaintiff would have no entitlement to monetary damage for the CRAs' failure to delete the tradeline. His sole remedy was to require Cenlar to re-request deletion.

Cenlar did not violate the FCRA. Reporting Plaintiff's credit experience with Cenlar was not "inaccurate." Plaintiff alleges only that Cenlar agreed not to report anything but instead reported something. But the "something" Cenlar reported was accurate. Plaintiff in fact had failed

2

to make timely mortgage payments and Cenlar did nothing more than report that accurate information. That is not a violation of the FCRA.

Even if Cenlar were in breach of its agreement to "delete the tradeline," failure to discharge that obligation is not a violation of the FCRA, nor does it make the information that was reported inaccurate, nor was Cenlar's verification that it was reporting accurate information any violation of the FCRA.

This case is a terrible example of lawyer-driven litigation. Plaintiff complains that it took him months to get the tradeline deleted and that he was forced to pay $19.95 to obtain a credit report and also to hire counsel to file this lawsuit. But all he needed to do was have his lawyer call Cenlar's lawyer. When that finally happened, the tradeline was immediately deleted. This lawsuit was and is completely unnecessary as well as unfounded. It should be dismissed with prejudice.

**FACTUAL BACKGROUND**

This action arose from a prior lawsuit brought by Bradley Benes. On May 3, 2022, Benes filed a putative class action complaint in the Circuit Court of Cook County. *Benes v. Cenlar, FSB*, 1:22 cv 3177, Dkt. No. 1. He alleged that on November 1, 2006, he executed a mortgage loan in the amount of $41,800.00. *Id.* ¶ 7. He further pleaded that in 2019, he filed a Chapter 13 Bankruptcy, and on January 2, 2020, the bankruptcy court discharged the mortgage debt. *Id.* ¶¶ 10, 15. He claimed that on March 1, 2022, Cenlar sent him a mortgage statement that sought to collect the mortgage debt from Benes personally. *Id.* ¶ 19. Benes alleged in this initial lawsuit that Cenlar violated the Fair Debt Collection Practices Act. *Id.* ¶¶ 40-51.

On June 16, 2022, Cenlar removed the prior lawsuit to this Court. *Benes v. Cenlar, FSB*, 1:22 cv 3177, (1:22 cv 3177 Dkt. No. 1). On January 4, 2023, Benes filed a notice of settlement, reporting that the parties had reached an agreement resolving the case. (*Id.*, Dkt. No. 23).

3

On March 3, 2023, the parties entered a stipulation dismissing the prior lawsuit with prejudice. (*Id.*, Dkt. No. 25).

On November 8, 2023, Benes filed the current lawsuit against Cenlar. (Dkt. No. 1.) He alleges that under the settlement agreement, the mortgage loan was waived and released, and that Cenlar was required to delete the tradeline for the mortgage loan from Benes's credit reports. (*Id.* ¶ 8.) He avers that, despite the agreement, Cenlar continued to furnish information about his mortgage debt to the CRAs. (*Id.* ¶ 9.) He further alleges that on May 1, 2023, he disputed this account with the consumer reporting agencies, that on information and belief, the CRAs relayed this dispute to Cenlar, and Cenlar thereafter failed to reasonably investigate Benes's dispute. (*Id.* ¶¶ 10-19.) Benes specifically claims that in an effort to remedy the inaccurate reporting of the mortgage loan, he purchased a credit report and score. (*Id.* ¶ 27.)

Benes raises two counts in the Complaint. First, he alleges that Cenlar breached the settlement agreement by failing to delete the mortgage account tradeline. (*Id.* ¶¶ 32-34.) Second, he alleges that Cenlar violated the Fair Credit Reporting Act section 1681s-2(b) when it failed to conduct a reasonable investigation with respect to the disputed information and when it failed to correct the disputed information about the mortgage loan (*i.e.*, delete the tradeline). (*Id.* ¶¶ 35-50.)

## LEGAL STANDARD

Rule 12(b)(6) compels dismissal of a complaint that fails to state a claim upon which relief can be granted. "In resolving a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions." *Booker v. New Penn Fin., LLC*, 575 B.R. 823, 824 (N.D. Ill. 2017) (citing *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2015)). The Court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper

4

judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). In resolving a motion to dismiss, the court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "If, when viewed in a light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case." *Nationscredit Home Equity Servs. Corp. v. City of Chi.*, 135 F. Supp.2d 905, 908 (N.D. Ill. 2001) (citing *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987)).

## ARGUMENT

1. **The breach of contract count should be dismissed because the consumer report on which Benes relies shows that Cenlar complied with the agreement, and because the settlement agreement expressly limited Benes's remedies for a breach.**

Benes's breach of contract count should be dismissed because Cenlar complied with the settlement agreement from the prior lawsuit. To establish a breach of contract claim, Benes must show: (1) the contract existed; (2) the plaintiff performed the conditions precedent required by the contract; (3) the defendant breached the contract; and (4) damages. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020) (citing *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013)). Under Illinois law, when a contract does not specify a deadline for performance, "a reasonable time will be implied." *Abellan v. Lavelo Prop. Mgmt.*, 948 F.3d 820, 829 (7th Cir. 2020) (citing *Bowens v. Quinn*, 561 F.3d 671, 675 (7th Cir. 2009)).

In the settlement agreement, Cenlar agreed to delete the tradeline for the mortgage account. Notably, however, the agreement did not mandate any deadline by which this needed to be done.

5

(Settlement Agreement, Ex. 1 at 2.)² Cenlar specifically avoided agreeing to ensure the tradeline was deleted by any particular date. Moreover, the parties agreed that Benes's "only remedy under this provision is to require Cenlar to re-submit its reporting request a second time per this provision with the CRAs." *(Id.)* The parties thus contemplated that if Benes felt Cenlar was not acting quickly enough, or that Cenlar's request of the CRAs to delete the tradeline had not resulted in deletion, Benes would *ask* Cenlar to re-submit a request to the CRAs. The settlement agreement was fully executed on February 28, 2023, and the stipulation dismissing the prior lawsuit with prejudice was entered on March 3, 2023. *Benes v. Cenlar, FSB*, 1:22 cv 3177, Dkt. No. 25.

      Benes's consumer report shows that the tradeline was deleted prior to August 25, 2023. (Credit Report, Grp. Ex. 2 at 1-3.)³ This Court can take judicial notice of the consumer report without converting this motion to dismiss into a motion for summary judgment. Courts have taken a broader view of what may be attached to a motion to dismiss; a court may consider "documents that are central to the complaint and are referred to in it". *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Moreover, courts have taken judicial notice of consumer reports attached in support of motions to dismiss FCRA-style claims. *Mamisay v. Experian Info. Sols., Inc.*, No. 4:16 cv 5684, 2017 U.S. Dist. LEXIS 124399, at *3 n.2 (N.D. Cal. Aug. 7, 2017) (taking notice of credit reports in support of a 12(b)(6) motion). In this case, the state of Benes's consumer report is central to his claims. Moreover, he relies on his purchased consumer report and score in the complaint.

---

² The settlement agreement is confidential. Contemporaneously with this motion, Cenlar is filing a motion for leave to file the settlement agreement under seal.

³ Group Exhibit 2 is the August 25, 2023 search results for Benes's mortgage loan account. The first page is for Experian; the second page are the results from Innovis; and the third page are the results from TransUnion. The results show that the mortgage loan account no longer appears on Benes's consumer report.

(Dkt. No. 1, ¶ 27.) As a result, this Court can take judicial notice of the consumer report in the context of Cenlar's Rule 12(b)(6) motion.

In sum, Benes alleges a breach of contract claim because Cenlar failed to request that the CRAs delete the tradeline. But there was no deadline for Cenlar to make that request, and the tradeline for the mortgage account was in fact deleted.

Additionally, Benes's breach of contract claim should be dismissed because the limited remedy for failure to satisfy the credit reporting term of the settlement agreement is expressly does not provide for damages in a private lawsuit. "Consistent with the strong public policy favoring freedom of contract, 'in Illinois parties can limit remedies and damages for breach if their agreement so states and no public policy bar exists.'" *Price v. Code-Alarm, Inc.*, No. 91 C 699, 2002 U.S. Dist. LEXIS 14874, at *25 (N.D. Ill. Aug. 12, 2002) (citing *Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 512 (2d Dist. 1992)). For example, in *Price*, the defendant argued that the Court should rescind a settlement agreement because the plaintiff failed to satisfy a clause of the agreement requiring his cooperation. *Id.* The court rejected this argument, and noted that the cooperation clause of the settlement agreement specified the remedy if the plaintiff failed to cooperate: the defendant could withhold a portion of payment due under a separate section of the settlement agreement. *Id.* Thus, the defendant was limited to that remedy.

In this case, Benes is suing Cenlar for breach of contract and seeking damages for Cenlar's alleged failure to ensure that the mortgage account tradeline was deleted pursuant to the settlement agreement. (Dkt. No. 1 at 5.) But the agreement limits Benes's remedy for a violation of the credit reporting clause: "Borrower's *only remedy under this provision* is to require Cenlar to re-submit its reporting request a second time per this provision with the CRAs." (Ex. 1 at 2) (emphasis

7

added). Benes voluntarily agreed as part of the prior case's settlement that his remedy for the consumer reporting clause would be limited to require Cenlar to request that the tradeline be deleted again. He cannot bring a lawsuit seeking general contract damages under that clause.

There is no question that the parties contemplated and agreed (1) there was no deadline by which Cenlar needed to request the tradeline deletion, and (2) if Benes found that the tradeline had not been deleted, his only remedy was to demand that Cenlar re-submit a request to the CRAs for deletion. Notably, the complaint is silent about when Benes first noticed that the tradeline had not been deleted, but he clearly did not reach out to Cenlar, or Cenlar's counsel, seeking the submission of a reporting request (as he expressly agreed to do). Instead, he claims he sent dispute letters to the CRAs stating that the tradeline should be deleted. (Dkt. No. 1 ¶¶ 10-19.) Not only was this course of action baffling—instead of reaching out to Cenlar or its counsel directly, when Benes had just signed an agreement acknowledging that Cenlar does not control the CRAs, and the remedy for failure to delete the tradeline was to tell Cenlar to re-submit the request, he failed to do that and instead only contacted the CRAs—but it also does not comport with what Benes agreed to do in the settlement agreement. When Benes did what the settlement agreement contemplated – reach out to Cenlar and request deletion because it had not occurred yet - the tradeline was immediately deleted.

Thus, Benes's claim for breach of the settlement agreement should be dismissed with prejudice.

2. **The Fair Credit Reporting Act claim should be dismissed because Benes's claims are barred under the settlement agreement, and the reporting was accurate.**

The Fair Credit Reporting Act claim should also be dismissed under Rule 12(b)(6). Preliminarily, motions to dismiss may be brought when a claim is barred because it was released in a prior settlement agreement. For example, in *Hudson v. JPMorgan Chase Bank, NA*, the

8

defendant brought a Rule 12(b)(6) motion, and argued that the lawsuit was barred by a prior settlement agreement. No. 19 cv 1284, 2020 U.S. Dist. LEXIS 100642, at *5 (C.D. Ill. June 9, 2020). The Court noted that under Illinois law, a settlement agreement is a contract, and a "release within a settlement agreement is also governed by contract law." *Id.* at *12. The Court noted that when an agreement is clear and explicit, a court must enforce the agreement as written, and that a "release is the abandonment of a claim to the person against whom the claim exists." *Id.* at *12-13. In this case, the settlement agreement is governed by Illinois law. (Ex. 1 at 5.)

Further, a settlement agreement releasing a furnisher of information from claims connected with or arising out of the account bars a further action for failure to delete a tradeline. For instance, in *Matthews v. Credit One Bank, N.A.*, a debtor brought a prior FCRA lawsuit against a credit card company, and alleged that it failed to investigate and delete a tradeline for a charged-off credit card with a zero dollar balance. No. 20-228, 2021 U.S. Dist. LEXIS 112856, at *2 (D. Md. June 16, 2021). The prior lawsuit settled, and the debtor released all claims and actions against Credit One that were related to those raised in the initial lawsuit. *Id.* Credit One agreed to request that the credit reporting agencies delete the tradeline for the credit card. *Id.* at *3.

Ten months later, the debtor filed another FCRA lawsuit, and alleged that Credit One failed to adequately investigate and delete the disputed information for the credit card account. *Id.* at *3-4. The debtor alleged that she disputed the account because "Credit One agreed to remove the debt from her report." *Id.* at *4 (internal quotations omitted). Credit One moved to dismiss the complaint, and argued that the settlement agreement released it from claims that arise from or were connected with the original lawsuit. *Id.* at *8. The Court held that the debtor's current claims arose out of the same facts that prompted her first lawsuit. *Id.* at *9-10.

9

The debtor argued that the settlement agreement from the prior lawsuit couldn't bar the second lawsuit because her claims were new violations that occurred after the agreement was executed. *Id.* at *10. The Court rejected this argument, and reasoned that regardless of whether the debtor's current claims related to conduct that took place after the parties executed the agreement, it "specifically precludes all claims or causes of action which in any way, directly or indirectly, or in any other way arise from or are connected with" the prior lawsuit. *Id.* at *11. "Because both lawsuits involve the same claim—that is, Credit One's failure to adequately investigate and/or delete the $594 tradeline—her present claim is clearly precluded." *Id.*

This case is no different. In the settlement agreement that is central to Benes's current lawsuit, he released Cenlar from all "claims, demands, actions, causes of action, [and] suits", "whether known or unknown", that "arise out of, relate to, or in any way, directly or indirectly, involve" the prior lawsuit. (Ex. 1 at 4.) This lawsuit relates to the mortgage account allegations in the prior lawsuit. Benes has therefore already released the claim he seeks to assert in this lawsuit.

More broadly, Benes's FCRA claim fails because his claims of injury stem from the alleged breach of contractual obligations. As the Court in *Matthews* noted, although the "current claim against Credit One is styled as an FCRA claim, the claim effectively arises from Credit One's failure to compel the CRAs to delete the $594 tradeline in the time provided by the Settlement Agreement." *Matthews*, 2021 U.S. Dist. LEXIS 112856 at *13. In this case, Benes's claim is essentially that Cenlar agreed to do something regarding Benes's credit report in a settlement agreement, and didn't do it—the alleged injury exists because of the contractual obligations. The FCRA claim fails for this additional reason.

Similarly, the FCRA claim should be dismissed because the credit reporting was accurate. In the Complaint, Benes does not dispute that he did not owe the mortgage debt—he merely alleges

10

that Cenlar agreed to waive and release the debt. (Dkt. No. 1 ¶ 8.) Indeed, he describes it as an "outstanding mortgage loan owed to Defendant" prior to the settlement agreement. (*Id.* ¶ 7.) Reporting Benes' credit history to the CRAs when Cenlar agreed to delete that information does not render the information reported inaccurate. Benes is not alleging that the reporting was inaccurate; he merely alleges that Cenlar breached its contractual obligations to not report anything.

As a result, Benes's FCRA claim should be dismissed with prejudice.

## CONCLUSION

For the forgoing reasons, Cenlar FSB respectfully requests that this Court dismiss Plaintiff's complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for all other relief that is just and equitable.

**CENLAR FSB**

By: /s/ Louis J. Manetti, Jr.
Louis J. Manetti, Jr.

Thomas J. Cunningham (6215928)
tcunningham@lockelord.com
Nicholas D. O'Conner (6302672)
noconner@lockelord.com
Louis J. Manetti (6293288)
louis.manetti@lockelord.com
**LOCKE LORD LLP**
111 S. Wacker Drive
Chicago, IL 60606
T: (312) 443-1726 (LJM)

## CERTIFICATE OF SERVICE

I, Louis J. Manetti, Jr., an attorney, certify that I caused the foregoing *Motion to Dismiss Under Rule 12(b)(6)* to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on January 9, 2024.

/s/ Louis J. Manetti, Jr.

11